```
                                              FILED
                                          GREAT FALLS DIV.

                                          '06 APR 13  PM 12 05

                                          PATRICK E. DUFFY, CLERK
     IN THE UNITED STATES DISTRICT COURT  BY _____
                                                 DEPUTY CLERK
         FOR THE DISTRICT OF MONTANA

                HELENA DIVISION
```

| | |
|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY and TRANSPORTATION INSURANCE COMPANY,<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>vs.<br><br>ST. PAUL MERCURY INSURANCE COMPANY,<br><br>    Defendant,<br>    Counterclaimant and<br>Third-Party Plaintiff,<br><br>vs.<br><br>ALPINE CONSTRUCTION, INC.,<br><br>    Third-Party Defendant. | CV-05-31-H-DWM<br><br><br><br><br><br><br><br><br><br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Transcontinental Insurance Company ("Transcontinental") and Transportation Insurance Company ("Transportation") brought this declaratory judgment action against St. Paul Mercury Insurance Company ("St. Paul") seeking the Court's declaration of the parties' rights and obligations following settlement of an underlying personal injury action. *Cmplt.* (Court's Doc. No. 1). St. Paul counterclaimed, and also filed a Third-Party Complaint

against Alpine Construction, Inc. ("Alpine"). *Defts' Answer, Counter Claim and Third Party Cmplt.* (Court's Doc. No. 8).

By Order (Court's Doc. No. 7) filed August 24, 2005, Chief U.S. District Judge Donald W. Molloy referred this case to the undersigned Magistrate Judge for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1), including submission of proposed findings of fact and recommendations. Now pending before the Court is Alpine's Motion to Dismiss (Court's Doc. No. 16). Having reviewed the motion and the parties' briefs in support of their respective positions, the Court offers the following Findings and Recommendation.

I.  **BACKGROUND**.

In 1998, the State of Montana granted a construction project to Blahnik Construction Inc. ("Blahnik"), as general contractor, to improve Interstate 15 in Pondera County, Montana, north and south of the Valier interchange. *Cmplt. at ¶ 10*. Blahnik entered into a subcontract with Alpine for Alpine to provide safety signage and traffic control for the construction project. *Id. at ¶ 11*.

Transcontinental issued Alpine a commercial general liability ("CGL") insurance policy, with $1,000,000.00 limits, that was in effect during the time relevant in this case. *Id. at ¶ 6*. Transportation issued Alpine a commercial umbrella PLUS insurance policy with limits of liability of $3,000,000.00 during

-2-

the time relevant in this case. *Id. at* ¶ 7. Both policies contained blanket additional insured endorsements and both such endorsements provided that such coverage was excess over other insurance provided to the additional insureds. *See Cmplt., Exhibits A, B.*

St. Paul issued Blahnik a contractor's commercial general liability policy in effect during the relevant time. *Id. at* ¶ 8. St. Paul also issued Blahnik an umbrella excess liability protection policy with limits of liability of $9,000,000.00 in effect during the relevant time. *Id. at* ¶ 9.

On May 23, 1999, Wendy Andelin ("Andelin") was driving her car through the construction zone. *Id. at* ¶ 12. Andelin lost control of her vehicle, which left the highway and rolled. *Id.* Andelin's passenger, Erin Brostuen ("Brostuen"), suffered severe injuries in the rollover. Brostuen's guardian and conservator settled with Andelin and then brought a civil action against Alpine, Blahnik and the State of Montana in the Montana First Judicial District Court, Lewis and Clark County. *Id. at* ¶ 13.

On March 18, 2005, Alpine, Blahnik and the State of Montana agreed to settle Brostuen's claim for the sum of $3,500,000.00. *Id. at* ¶ 15. Transcontinental contributed $1,000,000.00 and Transportation contributed $750,000.00, each reserving the right to seek indemnity or contribution from other insurers. *Id.* St. Paul contributed $1,750,000.00, also reserving the right to seek

indemnity or contribution from other insurers.  *Id.*[1]

On June 15, 2005, Transcontinental and Transportation filed this action against St. Paul.  *Cmplt. at 1.*  Transcontinental seeks the Court's declaration that coverage under the CGL policy for additional insureds Blahnik and the State of Montana is limited to liability relating to Alpine's operations and the additional insureds' supervision thereof.  *Id. at ¶ 19.*  Transportation seeks the Court's declaration that there is no insurance coverage provided to Blahnik or the State of Montana for this loss under Transportation's umbrella policy issued to Alpine.  *Id. at ¶ 20.*  Transcontinental and Transportation seek the Court's declaration that the contract between Alpine and Blahnik does not require Alpine to indemnify the State of Montana or Blahnik for Blahnik's own negligence.  *Id. at ¶ 21.*  Finally, Transportation claims entitlement to indemnity from St. Paul in the amount of $750,000.00.  *Id. at ¶¶ 22-25.*

On September 2, 2005, St. Paul filed its Answer, Counter Claim and Third Party Complaint ("*Third-Party Cmplt.*").  St. Paul has taken an assignment of all of Blahnik's claims against Transcontinental, Transportation and Alpine.  *Third-Party Cmplt. at ¶ 27.*  With respect to the Third-Party Complaint against

---

[1] The defendants in the underlying action expressly reserved any claims they may have against the others, such that Blahnik's right to seek indemnity from Alpine was not released in the underlying settlement agreement.

Alpine, St. Paul claims, *inter alia*, that the subcontract between Blahnik and Alpine *(attached to the Complaint as Exhibit D)* required Alpine to indemnify and hold harmless Blahnik and the State of Montana for all claims resulting from the performance of the subcontract, whether or not the loss was caused in whole or in part by the negligence of Blahnik. *Id. at ¶ 10.* St. Paul also claims that the subcontract required Alpine to procure and maintain comprehensive general liability insurance and all insurance that Blahnik had to have under Blahnik's contract with the State of Montana. *Id. at ¶ 11.* St. Paul claims that the allegations supporting Brostuen's complaint triggered Alpine's duty to defend and indemnify Blahnik and the State of Montana under the subcontract, but that Alpine breached these obligations, thus giving rise to St. Paul's claims against Alpine for breach of contract (Count I), equitable subrogation (Count III) and declaratory relief (Count V). *Id. at ¶¶ 29-35, 46-48 and 55-57.* St. Paul seeks from Alpine, *inter alia*, indemnity for settlement proceeds contributed by St. Paul on behalf of Blahnik and the State of Montana in the underlying lawsuit. *Id. at ¶¶ 30-35.*

On January 17, 2006, Alpine filed its motion to dismiss St. Paul's third-party complaint against it for failure to state a claim upon which relief can be granted.

## II. DISCUSSION.

### A. Standard of Review.

In considering a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff." Seinfeld v. Bartz, 322 F.3d 693, 696 (9th Cir. 2003) (quoting Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000), cert. denied, 532 U.S. 1021 (2001)). Dismissal is improper unless it appears beyond doubt that St. Paul can prove no set of facts in support of its claims that would entitle it to relief. See DeGrassi v. City of Glendora, 207 F.3d 636, 644 (9th Cir. 2000).

Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994), cert. denied, 515 U.S. 1173 (1995). The Court is not required to assume, however, that St. Paul can prove facts different from those alleged in its Third-Party Complaint. See Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). Also, the Court may dismiss a claim where St. Paul has

alleged facts that disclose some absolute defense or bar to recovery. See Weisbuch v. County of L.A., 119 F.3d 778, 783, n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts.").

**B.    *The Parties' Arguments*.**

Alpine argues that Montana law precludes St. Paul from bringing claims for contribution and indemnity against it. *Alpine's Opening Brief at 5*.  First, Alpine argues that because its insurance companies settled the underlying lawsuit with Brostuen on Alpine's behalf, Montana law on joint tortfeasor liability precludes St. Paul from seeking contribution or indemnity against Alpine. *Id. at 3-5*.[2]

Second, Alpine argues that it also has no obligation, under Montana law, to indemnify St. Paul, as assignee of Blahnik's rights, to the extent St. Paul's payment of settlement funds was due to any negligence on Blahnik's part, even if the obligation is based on an indemnity provision in a written contract between Alpine and Blahnik. *Id. at 4-5*.[3]  Alpine argues that the

---

[2] In advancing this argument, Alpine relies on the following cases: Cusenbary v. Mortensen, 987 P.2d 351 (Mont. 1999); Durden v. Hydro Flame Corp., 983 P.2d 943 (Mont. 1999); Holmberg v. Strong, 899 P.2d 1097 (Mont. 1995); Sprinkle v. Burlington Northern Railroad Co., 769 P.2d 1261 (Mont. 1989); and State ex rel. Deere & Co. v. District Court, 730 P.2d 396 (Mont. 1986) (hereafter "Deere").

[3] In advancing this argument, Alpine relies on the following cases: Rogers v. Western Airline, 602 P.2d 171 (Mont. 1979); Fletcher v. City of Helena, 517 P.2d 365 (Mont. 1973); Crosby v. Billings Deaconess Hosp., 426 P.2d 217 (Mont. 1967); and Great Northern Railway Co. v. United States, 187 F.

settlement funds paid to Brostuen on its behalf entitle Alpine

> to buy its peace, terminate involvement in litigation, and not be subjected to claims for contribution or indemnity by other tort-feasors (Blahnik and the State of Montana) or their insurers seeking contribution and indemnity by means of subrogation or assignment.

*Id.* at 5.

In response, St. Paul argues that Alpine's arguments have no application in this case. *St. Paul's Resp. Brief at 2*. First, St. Paul argues that because it has asserted an indemnity claim premised upon breach of contract, and not upon a theory of joint tortfeasor liability under Mont. Code Ann. § 27-1-703, Alpine's argument fails. *Id.* at 7-9. Specifically, St. Paul argues that its claim for damages arises out of Alpine's breach of the terms of its subcontract with Blahnik, including Alpine's failure to indemnify and hold harmless Blahnik and the State of Montana from claims raised in the Brostuen lawsuit.[4] *Id.* at 9. It is not based upon a theory of joint tortfeasor indemnity. Thus, St. Paul argues, Alpine's reliance on cases construing joint tortfeasor liability under Mont. Code Ann. § 27-1-703 blurs the distinction between tort and contractual claims for indemnity

---

Supp. 690 (D. Mont. 1960).

[4] St. Paul also argues in its brief that Alpine breached the terms of its subcontract with Blahnik by failing to list the State of Montana as an "additional insured". *St. Paul's Resp. Brief at 9*. This allegation is directly contrary to contentions in St. Paul's Third Party Complaint, wherein St. Paul "states that both Blahnik Construction and the State of Montana were additional insureds" under Alpine's policies. *See Third-Party Cmplt.* ¶¶ 5, 6.

against a joint tortfeasor, and Alpine's motion to dismiss fails.

Second, St. Paul argues that its claim for contractual indemnity is not barred. *Id.* St. Paul argues that Alpine's motion is not properly before the Court because St. Paul's third-party complaint asks the Court to declare the extent of Alpine's duties and obligations arising under the subcontract, which is essentially what Alpine's motion to dismiss asks the Court to do. St. Paul requests that the Court decline to address this issue in the context of the instant motion since it will be the subject of a summary judgment motion in the future. *Id.*

In support of this request, St. Paul argues that Montana law recognizes that contractual indemnity provisions are enforceable, and that a party may be indemnified against its own negligence provided the scope of the indemnity obligation is set forth in clear and unequivocal terms. *Id. at 10.* Thus, St. Paul argues, the Court should deny Alpine's motion to dismiss, and reserve resolution of this issue until further development of the record and the parties' arguments.

In reply, Alpine argues that it has not brought its motion to dismiss under Mont. Code Ann. § 27-1-703, which provides a mechanism for apportioning liability among joint tortfeasors, even if one has settled. *Alpine's Reply at 4.* Rather, Alpine argues, its motion is premised upon Montana common law, which precludes indemnity claims against settling tortfeasors. *Id.*

Alpine maintains that it and Blahnik were joint tortfeasors in the Brostuen action and, because Alpine settled, via its insurers, with Brostuen, St. Paul, as assignee of Blahnik's interest, cannot seek indemnity from Alpine under Montana law. *Id.* at 5-7. Alpine argues that, under Montana law, there is no distinction, as St. Paul maintains, between tort and contractual claims for indemnity against a settling joint tortfeasor. *Id.* at 7.

C.  **_Analysis_**.

With respect to Alpine's first argument, the Court concludes that Rule 12(b)(6) dismissal is not appropriate. The cases upon which Alpine relies in arguing that a defendant cannot seek indemnity against another defendant who has settled with the plaintiff, see *supra* note 2, all involve factual situations in which a tortfeasor sought contribution and/or indemnity from a co-tortfeasor after one tortfeasor had settled with the plaintiff. None of the cases, however, involve a situation analogous to that of the instant case in which there is a contract between the joint tortfeasors that contains an indemnity provision. Thus, as discussed *infra*, Alpine's reliance on this argument, and on the cited cases, is misplaced.

In Cusenbary, a negligence action, the Montana Supreme Court determined that a third-party complaint for contribution and indemnity was extinguished once plaintiff settled with and

released third-party defendants.  987 P.2d at 361.  No indemnification agreement existed between the parties.

In Durden, a products liability action, the supreme court held that settlement by one tortfeasor precluded claims for both contribution and indemnity against the settling tortfeasor.  983 P.2d at 948.  No agreement with respect to contribution or indemnity existed between the joint tortfeasors.

In Holmberg, a negligence action, the supreme court held that one settling tortfeasor could not pursue a contribution claim against a non-settling tortfeasor after the trial court had approved the settlement and after the plaintiffs' complaint against all defendants had been dismissed.  899 P.2d at 1100-01.  No contribution or indemnity agreement existed.

In Sprinkle, a railroad employee, injured in the course and scope of his job with the defendant railroad company, brought an action in federal court against the railroad under the Federal Employers' Liability Act.  The Montana Supreme Court, addressing a question certified from this Court, answered that the defendant railroad company, which settled with the plaintiff and received a general release of all claims against all defendants, had no contribution claim against a joint tortfeasor.  769 P.2d at 1261-62.  No contribution or indemnity agreement existed between the joint tortfeasors.

Finally, in Deere, the supreme court held that a joint

tortfeasor who settles with the plaintiff prior to entry of judgment on the claim is not subject to contribution or indemnity from the non-settling joint tortfeasors. 730 P.2d at 398, 402. Again, there was in <u>Deere</u> no contribution or indemnity agreement between the joint tortfeasors. The supreme court noted in <u>Deere</u> that "it is obvious that [the third-party plaintiff] is relying upon the implied concept of indemnity, and not upon contractual indemnity." 730 P.2d at 405.

While all of these decisions state the general rule that one defendant cannot seek contribution or indemnity from another defendant who has settled with the plaintiff, the general rule does not apply seamlessly to the facts as alleged in St. Paul's third-party complaint. St. Paul alleges that the subcontract between its insured (Blahnik) and Alpine required Alpine, *inter alia*, to indemnify Blahnik and the State of Montana for all claims resulting from performance of the subcontract, and that Alpine breached its obligations when the Brostuen action triggered them. *Third-Party Cmplt. at ¶¶ 10-16*. None of the foregoing cases upon which Alpine relies involve an indemnity agreement between joint tortfeasors. Alpine's Rule 12(b)(6) motion, therefore, fails to the extent it relies on the general rule from the cases discussed above.

Alpine next argues that it has no obligation to indemnify St. Paul, as assignee of Blahnik's rights, to the extent St.

Paul's payment of settlement funds was due to any negligence on Blahnik's part, even if the obligation is based on an indemnity provision in a written contract between Alpine and Blahnik. This argument also fails at this early juncture in the proceedings.

The Montana Supreme Court has "long recognized the legality of indemnity clauses and that they should be liberally construed in favor of the party intended to be indemnified." Slater v. Central Plumbing & Heating Co., 993 P.2d 654, 661 (Mont. 1999) (quoting Lesofski v. Ravalli Co. Elec. Coop., 439 P.2d 370, 371-72)). A contract may validly indemnify a party against its own negligence, if such indemnification is expressed in "clear and unequivocal terms." Amazi v. Atlantic Richfield Co., 816 P.2d 431, 434 (Mont. 1991); Sweet v. Colburn Sch. Supply, 639 P.2d 521, 523 (Mont. 1982); Lesofski, 439 P.2d at 372.

In light of the foregoing authority, and in view of St. Paul's claims against Alpine discussed *supra*, the Court concludes that St. Paul's third-party complaint states a claim against Alpine upon which relief can be granted. Thus, on the current record, dismissal on a motion made pursuant to Rule 12(b)(6) is inappropriate. Of course, the Court takes no position on the merits of either St. Paul's claims or Alpine's defenses.

### III. CONCLUSION.

Based on the foregoing,

**IT IS RECOMMENDED** that Alpine's Motion to Dismiss (Court's

Doc. No. 16) be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 13th day of April, 2006.

Carolyn S. Ostby
United States Magistrate Judge